WALLACE, JUDGE:
These claims were consolidated for hearing and decision. Claimant Ruby E. Shrader was the owner of a house and not designated as 3511 Cumberland Road, located at the intersection of Cumberland Road and Edgemont Drive in Blue-field, West Virginia, and also was the owner of a garage apartment located on Edgemont Drive to the rear of the house on Cumberland Road. Claimants James C. Martin, Jr. and Shirley B. Martin rented the Cumberland Road house from claimant Shrader. The claimants allege that due to improper design and construction of the drainage system of the Blue-field Bypass of U.S. Route 460, they sustained damage from *365 water flowing out of overflow pipes from under the highway across Cumberland Road.
The Bluefield Bypass at U.S. Route 460, a four-lane highway, was constructed as a portion of Appalachian Corridor Q. Cumberland Road is parallel to and on the north side of the U.S. Route 460 Bypass. The segment of the bypass relevant to this claim was designed by Gates Engineering Company and constructed by S. J. Groves & Sons, both under contract with respondent. The respondent accepted and approved the plans of Gates Engineering Company. The design of the highway provided for water drainage to be disposed of through underground limestone caves or caverns. Previous to the construction in the vicinity of the Shrader property, there had existed a depression or low area in which water from East River Mountain would collect and be dispersed through an underground limestone cave. It appeared as a small farm pond, 50 by 100 feet in size, and approximately five to six feet in depth. This pond or cave was utilized in the drainage system designed for the highway. One witness described the area as “essentially a huge sink hole.” The actual cave opening was not located, and a manifold was designed to carry water run-off which the sink hole had formerly handled for East River Mountain and the general vicinity. The manifold was a large horizontal corrugated metal pipe into which water entered from 60-inch and 54-inch pipes running under the road from the south side of the highway. Five pipes extended from the bottom of the manifold from which water percolated into the caves below. If the manifold was unable to handle the water for any reason and it rose two feet or more, it would be able to flow through two overflow pipes; one, 54 inches and the other, 48 inches, located to the west and east of the manifold respectively. The outlet of the 54-inch pipe was located approximately in front of the Shrader property. The 48-inch pipe was located to the east. The south ends or inlets of the overflow pipe were almost at highway level, and the north end on the Cumberland Road side of the highway emerged out of the bottom of the toe of the fill. There were no baffles or weirs at the inlet ends of the pipes. There were energy dissipating type baffles at the outlet ends designed to slow the flow of water out of the pipes and *366 riprap was in place to slow any erosion that might occur. The Cumberland Road area on the north side of U.S. Route 460, where the pipes emerged, slopes downward from east to west. Mr. Robert L. Long, a civil engineer for the Gates Engineering Company, testified in his deposition that it was anticipated that there would be water coming through the overflow pipes at some periodic intervals over the life of the highway, and such water would be deposited on the north side. He further stated that Gates was not asked to provide any method to dispose of the water other than the baffles and the riprap.
Frank Hamrick, a civil engineer employed by the respondent, testified that if water came through the overflow pipes,
“Hopefully, it would have stayed in the road (Cumberland Road) and gone down the road, which was close to where the lowest point is.”
He further testified that,
“There was no provision made beyond the right of way limits of that area because really there was not a natural drain there at the time.”
He further stated that,
“From an economic standpoint, it wasn’t justified.”
Continuous flowing occurred on October 6, 7, and 8, 1976, and again on June 17, 1977, caused by unusually heavy rainstorms. On these occasions, the manifold did not carry off the water and the excess water emptied through the overflow pipes. When the water exited the overflow pipes, it struck the baffles with such force as to shoot up into the air over them and proceed across Cumberland Road into portions of the first floor and basement garage of the Shrader house and into the basement of the garage apartment. The basement walls and floors were cracked, the walk into the house and driveways were damaged. The lawn and shrubs were washed out. Clothing and personal belongings of the Martins were damaged and destroyed. Mrs. Martin, during her high school days, nearly drowned in a swimming incident, memories of which caused her to become hysterical on each occasion at the sight of the water gushing *367 out of the pipe across the road from the house. Mr. Martin suffers from hemophilia and arthritis and is unable to go up and down stairs. After the floodings, the house remained damp, aggravating Mr. Martin’s condition. His condition and Mrs. Martin’s fear of a repetition of the rushing water entering the house were such as to necessitate the Martins to find another place to live. They had rented from Mrs. Shrader for $95.00 per month for many years and were unable to find comparable accommodations they could afford. Later, the Martins built a home on a lot given to them by Mrs. Martin’s parents.
Mrs. Shrader seeks $20,000.00 for damages sustained to her property. The Martins seek recovery of $83,853.40 for the loss of their clothing and personal property, for inconvenience and anguish, and for interest on the loan obtained for the construction of their new home, which will amount to $60,932.40 over the twenty-two-year life of the loan.
On the occasions of the floodings, the respondent was notified by the claimants. Employees of the respondent went to the property and observed the damages sustained. One employee testified that he saw the water gushing 30 to 40 feet into the air. After the flooding of June 1977, the respondent created a ponding or storage area on the south side of the U.S. Route 460 Bypass and installed baffles or weirs on the inlets of the overflow pipes. On the north side of the highway, respondent dug a ditch line between the toe of the embankment and Cumberland Road to carry off any water coming through the pipes. Severe storms have occurred since these changes and there has been no subsequent flooding.
In addition to the claim filed before this Court, the claimants brought suit in the Circuit Court of Mercer County against Gates Engineering Company and S. J. Groves & Sons. Mrs. Shrader’s suit was settled for $1,500.00, and the Martins accepted $5,000.00 to settle their litigation.
The Court finds that the respondent approved and accepted the plans and specifications for the drainage system designed for the section of the U.S. 460 Bypass in the vicinity of claimants’ property without consideration being given to the inability of the overflow system to properly carry off water. If *368 the overflow pipes had been supplied with the necessary baffles, ponding areas and a method provided to dispose of water as it leaves the outlets, there would have been no damage.
The Court finds that claimant Shrader is entitled to recover the sum of $19,810.00, less the $1,500.00 settlement already received. No recovery will be allowed the Martins for labor or interest on their loan. Accordingly, the Court makes the following awards.
Award of $18,310.00 to Ruby E. Shrader.
Award of $6,846.00 to James C. Martin, Jr. and Shirley B. Martin.